```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```
_____

BRUCE CARD,                      )
                                 )
    Plaintiff,                   )
                                 )
v.                               )          No. 03-2528 MI/An
                                 )
AMISUB (SFH) Inc., d/b/a         )
ST. FRANCIS HOSPITAL and         )
B. LAWSON, M.S.,                 )
                                 )
    Defendants.                  )
_____

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**
_____

Before the Court is the Motion to Dismiss and/or for Summary Judgment of Defendant Amisub (SFH), Inc., d/b/a St. Francis Hospital, filed June 29, 2005. Plaintiff filed a response on January 23, 2006.[1] Defendant filed a reply on January 30, 2006. For the following reasons, Defendant's motion is DENIED.[2]

---

[1] Under Local Rule 7.2 and Fed. R. Civ. P. 6, Plaintiff's response was due on or before August 1, 2005, but Plaintiff did not file a response. On December 16, 2005, the Court ordered Plaintiff to show cause why Defendant's motion should not be granted. Plaintiff filed a response to the Order to Show Cause on December 27, 2005, and a response to the instant motion on January 23, 2006.

[2] Accordingly, the Motion for Determination of Status on Motion for Dismissal and/or Summary Judgment, filed on August 5, 2005, by Defendant Amisub (SFH), Inc., d/b/a St. Francis Hospital is DENIED as MOOT.

**I.   Background**

This case arises out of Plaintiff Bruce Card's visit to Defendant Amisub (SFH), Inc., d/b/a St. Francis Hospital ("the Hospital") on July 26, 2001, where he was seen by Defendant Betty Lawson, M.S. ("Lawson"), an employee of the Hospital. Plaintiff's Complaint, filed July 18, 2003, alleges violations of 42 U.S.C. § 1395dd, the Federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), against the Hospital and Lawson. The Complaint also alleges state and common law claims of medical malpractice and negligence against the Hospital.

According to the Complaint, Plaintiff arrived at the Hospital on July 26, 2001, suffering from "emergency medical conditions" and requesting "medical care to avert danger of harm to himself due to depression, suicidal tendencies, and substance and alcohol abuse." (Compl. ¶ 12.) Plaintiff alleges that he described his symptoms to Lawson and filled out a hospital questionnaire. (Id. ¶ 14.) Lawson allegedly "performed a cursory medical examination/clinical evaluation" of Plaintiff that was "less comprehensive and afforded a lower degree of scrutiny than the screening normally provided for by [the Hospital] for other patients in similar circumstances." (Id. ¶ 15.) Lawson recommended that Plaintiff call an outpatient treatment center and provided Plaintiff a list of such centers. According to Plaintiff, he called each center on the list, but

was "refused treatment by each due to his health insurance status." Plaintiff told Lawson that none of the recommended centers would accept him for treatment, and Lawson allegedly replied that "they had done all they could possibly do." Plaintiff was subsequently discharged from the Hospital. (Id. ¶ 16.)

Upon discharge, Plaintiff "consumed a quantity of alcohol and intentionally cut his wrist with the intent of killing himself, resulting in Plaintiff being transported to another emergency medical care facility, where he received twelve stitches . . . and was involuntarily committed for treatment[.]" (Id. ¶ 19.)

**II.  Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of, "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d

351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc.,799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial, "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**III. Analysis**

    **A. EMTALA Claims**

Plaintiff alleges that the Hospital violated certain provisions of EMTALA by failing to perform an appropriate medical screening or to stabilize his condition prior to discharge. Defendant moves to dismiss this cause of action on two grounds:

(1) that Plaintiff's expert affidavit fails to establish a genuine issue of material fact on the screening claim; and (2) that Plaintiff's failure-to-stabilize claim sounds in negligence rather than under EMTALA.  The Court will address these arguments in turn.

Congress enacted EMTALA in 1986 in order to prevent "patient dumping"——the "practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions are stabilized."  Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266, 268 (6th Cir 1990).  EMTALA imposes certain duties upon hospitals to provide for appropriate medical screening upon request and stabilization in cases where the patient presents an emergency medical condition.  Id.

A hospital's duty to provide medical screening arises "if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition."  42 U.S.C. § 1395dd(a).  "A hospital 'must' provide for medical screening if a request is made." Kiser v. Jackson-Madison County Gen. Hosp. Dist., 2002 WL 1398543, at *3 (6th Cir. May 3, 2002)("Liability is strict in the sense that the hospital need not have an evil motive or knowledge that the patient has an emergency medical condition to be held liable for failing to screen the patient.")  EMTALA defines an "emergency medical condition" as:

-5-

> a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in . . . placing the health of the individual . . . in serious jeopardy[;] serious impairment of bodily functions[;] or serious dysfunction of any bodily organ or part . . . .

42 U.S.C. § 1395dd(e)(1)(A).

EMTALA further requires that if a hospital determines that an individual is suffering from an emergency medical condition, it may not transfer or discharge the patient until the condition has been stabilized. 42 U.S.C. § 1395dd(b); see also 42 U.S.C. § 1395dd(e)(3)(A)("The term 'to stabilize' means . . . to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" ). "The duty to stabilize does not arise unless the hospital first knows that the patient is suffering from an emergency medical condition. Consequently, because of the actual knowledge limitation, the stabilization provision, unlike the screening provision, does not impose strict liability." Kiser, 2002 WL 1398543, at *4. The provision "establishes an objective standard of reasonableness based on the situation at hand and requires . . . [that] the patient must be . . . provided with whatever medical support services and/or transfer arrangements . . . are

-6-

consistent with the capability of the institution and the well-being of the patient." Cherukuri v. Shalala, 175 F.3d 446, 450-51 (6th Cir. 1999)(internal quotations omitted); see also Kiser, 2002 WL 1398543, at *4 (noting that the stabilization provision "requires more that just uniform treatment of all patients; instead, a hospital must prevent the material deterioration of each patient's condition.")(citation omitted).

### 1. Failure to Adequately Screen

The Hospital originally moved to dismiss Plaintiff's failure-to-screen claim on the ground that it was unsupported by expert testimony.  In response, Plaintiff submitted the affidavit of Dr. Rebecca Simmons, a licensed physician in Tennessee who has been "practicing in the area of alcohol and drug abuse for 20+ years and [is] familiar with the standard of care in the screening, diagnosis and treatment."  (Pl.'s Response Ex. A ¶¶ 1-2.)  In her affidavit, Dr. Simmons states that Plaintiff was not properly screened and "should have been evaluated beyond the clinical assessment stage of non-professional personnel."  (Id. ¶¶ 4-5.)

The Hospital responded that Dr. Simmons' affidavit is insufficient to establish a genuine issue of material fact as to whether Plaintiff was properly screened.  The Hospital notes that Dr. Simmons' conclusions are based entirely on her review of the deposition of Defendant Betty Lawson, the nurse who met with

-7-

Plaintiff on July 26, 2001.  At her deposition, Lawson testified that she filled out a 22-page Unified Clinical Assessment form after meeting with Plaintiff upon his arrival at the Hospital.[3]  The Hospital argues that because Dr. Simmons did not review the Unified Clinical Assessment form, but merely Lawson's testimony, her opinions are insufficient to establish a genuine issue of material fact as to whether Plaintiff was properly screened.

Plaintiff, however, counters that he requested from Defendants the Unified Clinical Assessment form and all other records pertaining to his visit to the Hospital, but that they "have admitted that none exist although the records are normally kept in the ordinary course of Defendants['] business.  Further, said records existed up until said time as the Plaintiff put the Defendants on notice of a pending lawsuit against them."  (Pl.'s Mem. Supp. Pl.'s Resp. 1; see also Pl.'s Resp. to Order to Show Cause, Dec. 27, 2005, ¶¶ 6-7 (claiming that Defendant Lawson "testified that this form was in existence at the time that the hospital and she were made aware of a possible lawsuit and was reviewed during their meeting.  This form has since been destroyed and is a critical piece of evidence missing from this case." ))

In view of Plaintiff's unrefuted allegations that the

---

[3] The Hospital included excerpts of Lawson's deposition testimony in its reply brief.

-8-

assessment form and other hospital records pertaining to Plaintiff's July 26, 2001, visit are missing or have not been produced, the Court finds the Hospital's objection to the sufficiency of Dr. Simmons' affidavit to be unavailing.  The Court further finds that summary judgment is not appropriate on Plaintiff's screening claim, and accordingly, the Hospital's motion is DENIED.

### 2. Failure to Stabilize

Defendant also argues that Plaintiff's failure-to-stabilize claim should be dismissed because it is merely a state law negligence action.  The Sixth Circuit has opined that an action under EMTALA "is not analogous to a state medical malpractice claim because it creates liability for a refusal to treat, which state malpractice law does not." Thorton v. Southwest Detroit Hosp., 895 F.2d 1131, 1133 (6th Cir. 1990).  Moreover, unlike liability in negligence, liability under EMTALA's stabilization provision "requires actual knowledge of the condition." Roberts ex rel. Johnson v. Galen of Va., Inc., 325 F.3d 776, 786 (6th Cir. 2003).  As one court as explained:

> EMTALA differs from a traditional state medical malpractice claim principally because it also requires <u>actual knowledge</u> by the hospital that the patient is suffering from an emergency medical condition and because it mandates only stabilizing treatment, and only such treatment as can be provided <u>within the staff and facilities available at the hospital</u>.  EMTALA thus imposes liability for failure to stabilize a patient only if an emergency medical

> condition is actually discovered, rather than
> for negligent failure to discover and treat
> such a condition.  In addition, EMTALA imposes
> only a limited duty of medical treatment: a
> hospital need provide only sufficient care,
> within its capability, to stabilize the
> patient, not necessarily to improve or cure his
> or her condition.

Kiser, 2002 WL 1398543, at *4 (emphasis in original).

Construing the Complaint and Dr. Simmons' affidavit in the light most favorable to Plaintiff, the Court concludes that Plaintiff has set forth a genuine issue of material fact as to whether the Hospital had actual knowledge of Plaintiff's emergency medical condition and failed to stabilize his condition prior to discharge.  Accordingly, the Court DENIES the Hospital's motion for summary judgment on this claim.

**B. Medical Malpractice Claim**

In Tennessee, medical malpractice claims are governed by statute, which codifies the common law elements of negligence. Tenn. Code Ann. § 29-26-115(a); Kilpatrick v. Bryant, 868 S.W.2d 594, 597-98 (Tenn. 1993).  A medical malpractice claimant must prove three elements: (1) the recognized standard of acceptable professional practice in the profession in the relevant medical community; (2) that the defendant did not act with this requisite standard of care; and (3) that the defendant's negligence was the proximate cause of the harm suffered by the plaintiff. Id.  The burden to establish these elements is on the plaintiff, Dolan v. Cunningham, 648 S.W.2d 652, 654 (Tenn. Ct. App. 1983), and each

-10-

of the basic elements must "be proven by testimony of experts who were licensed and practicing in Tennessee or a contiguous bordering state during the year preceding the date that the alleged injury or wrongful act occurred." Payne v. Caldwell, 796 S.W.2d 142, 143 (Tenn. 1990). To survive a summary judgment motion, the plaintiff must come forward "with expert opinion on the issues of negligence and proximate cause to make out a genuine issue of material fact . . . ." Dolan, 648 S.W.2d at 653.

  Defendant moves for summary judgment on Plaintiff's medical malpractice claim on the sole basis that "Dr. Simmons' affidavit is defective in that it make absolutely no mention of causation." (Def.'s Response Pl.'s Response Def.'s Mot. 13.) Although Dr. Simmons' affidavit does not specifically state that the Hospital's negligence was the proximate cause of Plaintiff's injuries, the Court finds that this omission does not require the dismissal of Plaintiff's malpractice claim under the particular circumstances and procedural posture of this case. As noted above, Plaintiff has repeatedly alleged that the Clinical Assessment Form and other medical records from his visit to the Hospital on July 26, 2001, are missing or have not been produced to him in discovery. Viewing Plaintiff's proof in the most

favorable light and drawing all inferences in his favor,[4] the Court finds that summary judgment is not appropriate at this stage.  The Hospital's motion for summary judgment on Plaintiff's medical malpractice claim is DENIED.

**IV. Conclusion**

For the reasons set forth above, the Hospital's motion for summary judgment is DENIED.

So ORDERED this 29th day of March 2006.

                                  /s/ Jon P. McCalla
                                  JUDGE JON P. McCALLA
                                  UNITED STATES DISTRICT JUDGE

---

[4] See Welsh v. United States, 844 F.2d 1239, 1248 (6th Cir. 1988)("When . . . a plaintiff is unable to prove an essential element of her case due to the negligent loss or destruction of evidence by an opposing party, . . . it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence.")